Ernest D. Buff
Margaret A. LaCroix
Ernest D. Buff & Associates, L.L.C.
231 Somerville Road
Bedminster, NJ 07921
Tel: (908) 901 – 0220
Fax: (908) 901 – 0330

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Nite Glow Industries Inc., I Did It, Inc. and Marni Markell Hurwitz,<br><br>                              Plaintiffs,<br><br><br>                    - against -<br><br>Central Garden & Pet Company & Four Paws Pet Company, d/b/a Four Paws Products, Ltd,<br><br>                              Defendants. | CASE NO.:  2:12-cv-04047<br><br><br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiffs Nite Glow Industries Inc., I Did It, Inc. and Marni Markell Hurwitz (collectively, "Plaintiffs" or "I Did It") sues Defendants Central Garden & Pet Company & Four Paws Pet Company d/b/a Four Paws Products, Ltd. (collectively, "Defendants") for patent infringement and, for its Second Amended Complaint, alleges as follows:

## PARTIES

1.      Nite Glow Industries Inc. is a d/b/a of I Did It Inc., organized and existing under the laws of the State of New Jersey, with its principal place of business at 81 Mosle Road, Far

1

Hills, NJ 07931.

2.      I Did It is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 81 Mosle Road, Far Hills, NJ 07931.

3.      Marni Markell Hurwitz wholly owns I Did It Inc., d/b/a Nite Glow Industries Inc., and has wholly owned same since its incorporation.

4.      Defendant Four Paws Pet Company, on information and belief is a d/b/a of Four Paws Product, Ltd. (collectively, "Defendant Four Paws"), and on information and belief, is a corporation organized and existing under the laws of the State of New York, with its a place of business located at 3125 Veterans Memorial Highway, Unit #1, Suite G, Ronkonkoma, New York.

5.      On information and belief, Four Paws Product, Ltd., d/b/a Four Paws Pet Company, operates as a subsidiary of Defendant Central Garden & Pet Company (".

6.      Defendant Central Garden & Pet Company ("Defendant Central"), on information and belief, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1340 Treat Boulevard, Suite 600 Walnut Creek, CA 94597.

7.      On information and belief, Defendant Four Paws is wholly owned by Defendant Central and has been wholly owned by Central since at least as early as 1996.

8.      On information and belief, Defendant Central dominates Defendant Four Paws so that Defendant Four Paws is a conduit for Defendant Central.

9.      On information and belief, Defendant Central used Defendant Four Paws to

perpetrate a fraud or injustice, or otherwise to circumvent the law as against Plaintiffs in committing the acts complained of herein.

10.     Defendants, on information and belief, conduct business in this judicial district and have committed the acts complained of herein in this judicial district.

## JURISDICTION AND VENUE

11.     This is a civil action for patent infringement and arises under, among other things, the United States Patent Laws, 35 U.S.C. §§1 *et seq*.   Jurisdiction is therefore based upon 28 U.S.C. §§ 1331 and 1338(a), providing for federal question jurisdiction of patent infringement actions and exclusive jurisdiction of patent infringement actions in the U.S. District Courts.

12.     This Court has jurisdiction under 28 U.S.C. § 1332, in that there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds the sum or balance of $75,000, exclusive of interest and costs.

13.     This Court has supplemental jurisdiction over the state law claims of this complaint pursuant to 28 U.S.C. § 1367(a).

14.     Personal jurisdiction over Defendants is proper under at least the New Jersey long-arm statute, N.J.R. 4:4-4. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b). For example, on information and belief, Defendants and / or its partners have advertised, demonstrated, offered for sale, and/or sold products in this district and elsewhere, including, but not limited to, products that infringe the patents-in-suit.

15.     Defendants is actively engage in promoting, advertising, marketing, or offering its

services and / or doing business within this judicial district, and otherwise has sufficient contacts with this district to confer jurisdiction to this Court.

## **BACKGROUND**

16.     I Did It, Inc. d/b/a Nite Glow Industries specializes in research, development and innovation of intellectual property.  Through its innovation I Did It owns over a hundred patents and / or patent applications.  I Did It markets its products and technology by licensing or selling the patent rights to its products and technologies to name brand marketers and major retailers. Innovative products of I Did It include products for pets spanning from insulated water bottles, supplements, joint preserving supplements, innovative toys, collars and leashes, multiple grooming applications, dispersing mats for pet beds, tick and insect removal devices, and direct delivery applicator assemblies.  I Did Its' business includes discovery, research, development, manufacture, engineering, and sale of its innovative pet products.

17.     Included in I Did It's intellectual property portfolio are direct delivery applicator assemblies proven effective in directly delivering one or more active ingredients, such as flea, tick or insect repellant to an animal's skin.  Innovatively, the applicator comprises an applicator base connected to an applicator head having at least one prong member constructed with an internal channel therein in communication with a delivery aperture.  Improved delivery owing to the presence of at least one prong member and, optionally, a shield, is operative to yield direct delivery of the solution onto the animal's skin local to the fur shafts for a clean application and accurate dispersion of solution onto the animal.

18.     On November 15, 2011, the United States Patent and Trademark Office

("USPTO") issued United States Patent No. 8,057,445 ("'445 Patent") entitled "Direct Delivery Applicator Assembly And Method Of Use". A copy of the '445 Patent is attached as Exhibit A.

19.     I Did It is the owner by assignment of the full right, title, and interest in the '445 Patent. A copy of the assignment recordation with the USPTO is attached as Exhibit B.

20.     I Did It, Inc. d/b/a Nite Glow Industries' intellectual property portfolio further includes several patents directed to abrasion resistant omnidirectionally reflective pet leashes having a novel construction utilizing cylindrically braided sleeve having reflective properties providing substantially the entire surface of the leash with omnidirectional reflectivity, functionally reflecting incident light back to its source and clearly defining the pet leash. Due to the cylindrical character of the reflective braided sleeve of the subject pet leashes, some portion of the sleeve is always at orientation to the incoming light beam so that reflective properties are maximized.

21.     Patents included in I Did It, Inc. d/b/a Nite Glow Industries' intellectual property portfolio directed to these abrasion resistant omnidirectionally reflective pet leashes include United States Patent No. 7,204,206 ("'206 Patent") issued on April 17, 2007 entitled "Abrasion Resistant Omnidirectionally Reflective Pet Leash" and United States Patent No. 7,549,399 ("'399 Patent") issued on June 23, 2009 entitled "Abrasion Resistant Omnidirectionally Reflective Retractable Pet Leash". Copies of the '206 Patent and '399 Patent are attached as Exhibits I and J, respectively.

22.     Nite Glow Industries is the owner by assignment of the full right, title, and interest in the '206 Patent and '399 Patent. Copies of the assignment recordation with the USPTO are attached as Exhibit K.

23.     Pursuant to 35 U.S.C. § 282, each of the claims of the '445 Patent, '206 Patent and '399 Patent are presumed valid.

24.     Defendant Four Paws Pet Company d/b/a Four Paws Product, Ltd. manufactures, uses, offers for sale, and/or sells dog, cat, reptile, and small animal products. Four Paws products are distributed throughout the United States generally, and in the District of New Jersey.

25.     Defendant Central Garden & Pet Company supplies consumer lawn and garden and pet supply products, including direct delivery applicator assemblies, pet leashes and products. Defendant Central's products are distributed throughout the United States generally, and in the District of New Jersey.

26.     On August 27, 2008 Plaintiff carried out a presentation that detailed the direct delivery applicator assembly covered by the '445 Patent. Further, on May 5, 2009 I Did It via d/b/a Nite Glow Industries entered into a Confidentiality Agreement with Defendant Four Paw wherein Defendant Four Paws acted as an agent of its parent company, Defendant Central. A copy of the Confidentiality Agreement and presentation are attached as Exhibits D and E, respectively. At the May 5, 2009 meeting Plaintiff again detailed and discussed the direct delivery applicator assembly covered by the '445 Patent and the reflective pet leashes of the'206 Patent and '399 Patent. Pursuant to Paragraph 8 of the Confidentiality Agreement the effective date agreed upon was July 15, 2008 by and between Plaintiff's owner, Marni Markell and Defendant Four Paws Pet Company's President, Allen Simon, under, on information and belief, the domination and control of Defendant Central.

27.     Plaintiffs furnished confidential information, data, test results a prototype, and

know-how regarding the direct delivery applicator assembly covered by the '445 Patent and the reflective pet leashes of the '206 Patent and '399 Patent to Defendant's Four Paws' Product Manager John Cummings.  Also present at the meeting during which such confidential information of I DID IT was furnished were Allen Simon, Barry Askin, Barbara Hyder, Tony Hartian and Nancy Gilfillan.

28.　　Paragraph 3A of the Confidentiality Agreements sets forth that the Recipient agrees that the Confidential Information is to be considered confidential and proprietary to Owner and Recipient shall hold the same in confidence, shall not use the Confidential Information other than for the purposes of its business with Owner, and shall disclose it only to its officers, directors, or employees with a specific need to know. Recipient will not disclose, publish or otherwise reveal any of the Confidential Information received from Owner to any other party whatsoever except with the specific prior written authorization of Owner.

29.　　Paragraph 3C of the Confidentiality Agreements sets forth that [R]ecipient shall promptly and fully disclose and assign to Discloser all inventions and discoveries, whether patentable or not, resulting from or arising out of its activities hereunder and shall assist Discloser in every proper way, entirely at Discloser's expense, to obtain for Discloser patents on such inventions and discoveries, in any and all countries; all such inventions and discoveries to be and remain the property of Discloser whether or not disclosed, assigned or patented.

30.　　Paragraph 4 of the Confidentiality Agreement sets forth that "[E]ach party agrees that at all times and notwithstanding any termination or expiration of this Agreement it will hold in strict confidence and not disclose to any third party Confidential Information of the other, except as approved in writing by the other party to this Agreement, and will use the Confidential

Information for no purpose other than discussion with the other party to this Agreement."

31.     Paragraph 5 of the Confidentiality Agreement sets forth that"[T]he parties recognize and agree that nothing contained in this Agreement shall be construed as granting any property rights, by license or otherwise, to any Confidential Information of the other party disclosed pursuant to this Agreement, or to any invention or any patent, copyright, trademark, or other intellectual property right that has issued or that may issue, based on such Confidential Information."

32.     Confidential Information disclosed under the Confidentiality Agreement was not available to the public; Defendant Four Paws would not have had access to the Confidential Information but for Plaintiffs' disclosure of said confidential information to Defendant Four Paws.  Said Confidential Information gave Defendants a competitive advantage, and Defendants knew that Plaintiffs had an interest in protecting the information to protect its own competitive advantage.

33.     On information and belief, Defendant Central misappropriated and / or improperly used or disclosed Confidential Information, including confidential data, test results, a prototype, and know-how of Plaintiffs, garnered through Plaintiff's confidential disclosure to Defendant Four Paws.

34.     On information and belief, Defendant Central dominates Defendant Four Paws so that Defendant Four Paws is a conduit for Defendant Central and Defendant Central used Defendant Four Paws to perpetrate a fraud or injustice, or otherwise to circumvent the law as against Plaintiffs in misappropriating and / or improperly using and / or disclosing said Confidential Information.

35.     Defendant Central packaged and displayed a direct delivery applicator assembly and product at a Global Pet Show in Orlando, Florida during the dates of February 28th to March 2nd, 2012. Pictures of advertising materials from the Show, which depict and describe the applicator, are enclosed herewith as Exhibit C.

36.     On March 22, 2012 Defendant Central announced the launch of the Adams(TM) Smart Shield(TM) Applicator, as a "new" breakthrough topical flea and tick control delivery device with an exclusive, patent-pending design that gets fast, effective treatment down to pet's skin, where bugs live. The press release is attached as Exhibit H.

37.     Defendant Central's direct delivery applicator assemblies and products include / have included direct delivery applicator assemblies and products sold under the brand name Adams™ Smart Shield™ Applicator. Images of Defendant Central's direct delivery applicator assembly and product are attached as Exhibits C and F.  Defendant Central's direct delivery applicator assemblies and products have been sold and / or offered for sale throughout the United States, including on the World Wide Web.  See Exhibit G.

38.     Plaintiffs learned that Defendant Central was making, using, offering for sale and selling an omnidirectional reflective retractable pet leash disclosed confidentially under the Confidential Information and covered by the '206 Patent and '399 Patent. Exhibit I.

39.     The omnidirectional reflective retractable pet leash presented by Defendant Central included a marking on the packaging which included a notice of patent listing Plaintiff's '206 Patent and '399 Patent.  Exhibit M is herein provided showing the front and back packaging; see portion of back packaging of Exhibit M shown below:



40.     Included among the aforementioned obligations set forth in the Confidentiality Agreement was the requirement that the Confidential Information not be disclosed or used for any purpose other than that contemplated by the terms of the Agreement (i.e., Paragraph 4). The obligations also barred Defendants from using the confidential information for its own business purposes.  Despite legal obligations, the Defendants, possibly working in collusion with others, used Plaintiff's confidential information to copy and otherwise misappropriate the technology in developing, offering for sale and selling its direct delivery applicator assemblies and products.

41.     In fact, according to statements contained on product packaging and marketing literature of Defendant Central Garden, Defendants filed a US Patent Application directed to an invention or discovery that resulted from or arose out of its activities under the Confidentiality Agreement.   Despite Paragraph 3C of the Confidentiality Agreement Defendants did not promptly notify Plaintiff of such invention or discovery and did not fully disclose and assign to Plaintiff such invention or discovery, even though Paragraph 3C of the Confidentiality Agreement clearly states that all such inventions and discoveries are to remain the property of Plaintiff. (See Paragraph 3C of the Confidentiality Agreement).

42.     All acts alleged herein were done willfully, knowingly and intentionally with the

knowledge and intent that Plaintiff would be harmed.

**COUNT I**
**INFRINGEMENT OF THE '445 PATENT**

43.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

44.     In violation of 35 U.S.C. § 271(a), (b), and (c), Defendants have been and still are infringing, contributing to, and/or actively inducing infringement of the '445 Patent by manufacturing, using, offering to sell, and/or selling within the State of New Jersey and / or elsewhere in the United States, direct delivery applicator assemblies and products and methods that are covered by one or more claims of the '445 Patent.

45.     Defendants have profited and continue to profit from their manufacture, use, offers to sell, and sale of the infringing direct delivery applicator assemblies and products and methods.

46.     Upon information and belief, Defendant's infringement of the '445 Patent has been and continues to be willful, wanton, and deliberate.

47.     I Did It has been and continues to be damaged and irreparably harmed by Defendant's infringement of the '445 Patent.

**COUNT II**
**INFRINGEMENT OF THE '206 PATENT**

48.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

49.     In violation of 35 U.S.C. § 271(a), (b), and (c), Defendants have been and still are infringing, contributing to, and/or actively inducing infringement of the '206 Patent by manufacturing, using, offering to sell, and/or selling within the State of New Jersey and / or elsewhere in the United States, omnidirectional reflective retractable pet leash products and methods that are covered by one or more claims of the '206 Patent.

50.     Defendants have profited and continue to profit from their manufacture, use, offers to sell, and sale of the infringing omnidirectional reflective retractable pet leash assemblies and products and methods.

51.     Upon information and belief, Defendant's infringement of the '206 Patent has been and continues to be willful, wanton, and deliberate.

52.     I Did It has been and continues to be damaged and irreparably harmed by Defendant's infringement of the '206 Patent.

## COUNT III
## INFRINGEMENT OF THE '399 PATENT

53.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

54.     In violation of 35 U.S.C. § 271(a), (b), and (c), Defendants have been and still are infringing, contributing to, and/or actively inducing infringement of the '399 Patent by

manufacturing, using, offering to sell, and/or selling within the State of New Jersey and / or elsewhere in the United States, omnidirectional reflective retractable pet leash products and methods that are covered by one or more claims of the '399 Patent.

55.     Defendants have profited and continue to profit from their manufacture, use, offers to sell, and sale of the infringing omnidirectional reflective retractable pet leash assemblies and products and methods.

56.     Upon information and belief, Defendant's infringement of the '399 Patent has been and continues to be willful, wanton, and deliberate.

57.     I Did It has been and continues to be damaged and irreparably harmed by Defendant's infringement of the '399 Patent.


## COUNT IV
## UNFAIR COMPETITION & MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

58.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

59.     In addition to the above acts, Defendants misappropriated I Did Its confidential information, data, test results, prototype, and know-how relating to direct delivery applicator assemblies, products and methods technology after gaining access to I Did Its confidential information through Defendant Four Paws.

60.     In addition to the above acts, Defendants misappropriated I Did Its confidential information, data, test results, prototype, and know-how relating to omnidirectional reflective

retractable pet leash assemblies, products and methods technology after gaining access to I Did Its confidential information through Defendant Four Paws.

61. Confidential Information disclosed under the Confidentiality Agreement was not available to the public, Defendant Central would not have had access to the Confidential Information but for Defendant Four Paw's improper disclosure of said Confidential Information to Defendant Central, giving Defendant Central a competitive advantage, and Defendants knew Plaintiffs had an interest in protecting the information to protect its own competitive advantage and intellectual property rights.

62. I Did It has made substantial investments in anticipation of future growth in the market for its direct delivery applicator assemblies and products and methods.

63. I Did It has made substantial investments in anticipation of future growth in the market for its omnidirectional reflective retractable pet leash assemblies and products and methods.

64. The willful and malicious misuse of I Did It's confidential and proprietary information by Defendants has diverted business and / or licensing opportunities away from I Did It.

65. The acts and conduct of Defendants, as alleged above in this Complaint, constitute unfair competition, unfair business practices and misappropriation of confidential information contrary to the laws of the State of New Jersey.

66. The acts and conduct of Defendants, as alleged above in this Complaint, constitute fraud or injustice, and / or circumvention of the laws of the State of New Jersey and

United States Patent Laws, 35 U.S.C. §§1 *et seq*.

67.     As a direct, proximate and foreseeable result of the actions of Defendants, Plaintiffs have suffered monetary harm.

68.     The acts and conduct of Defendants, as alleged above in this Complaint, have damaged Plaintiffs and resulted in a loss of profit in an amount that is unknown at the present time.

69.     Upon information and belief, the aforesaid conduct by Defendants has caused, and unless restrained by this Court will continue to cause, immediate, great, and irreparable harm to Plaintiff's property and business.

70.     Plaintiffs have no adequate remedy at law.


## COUNT V
## BREACH OF CONFIDENTIALITY AGREEMENT

71.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

72.     Defendants have obligations under the Confidentiality Agreement.

73.     Defendants have breached those obligations in one or more ways set forth above.

74.     As a direct, proximate and foreseeable result of the actions of Defendants, Plaintiffs have suffered monetary harm.

75.     Irreparable harm will occur to Plaintiffs as a result of the breach of the Confidentiality Agreement.

76.     There is no adequate remedy at law.

77.     Plaintiffs have been damaged and seek compensation for damages in addition to injunctive relief.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

78.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

79.     Defendants have undertaken a course of business dealings with Plaintiffs in the transactions set forth herein and one or more of the Defendants has a pecuniary interest in such transactions.

80.     One or more of the Defendants supplied false information or omitted to provide information to Plaintiffs and/or failed to exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs.

81.     One or more of the Defendants owed Plaintiffs a duty due to one or more of the Defendants' relationship with Plaintiffs.

82.     One or more of the Defendants violated that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak existed.

83.     Plaintiffs justifiably relied upon the false information in its business transactions with one or more of the Defendants.

84.     Plaintiffs have suffered injury as a result of the acts or omissions of one or more of the Defendants set forth above.

85.     Irreparable harm will occur to Plaintiffs as a result of the wrongful acts of the Defendants.

86.     There is no adequate remedy at law.

87.     Plaintiffs have been damaged and seek compensation for damages in addition to injunctive relief.


## COUNT VII
## CONSTRUCTIVE FRAUD

88.     I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

89.     One or more of the Defendants owed Plaintiffs a duty due to one or more of the Defendants' relationship with Plaintiffs.

90.     One or more of the Defendants violated that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak existed.

91.     Plaintiffs justifiably relied and acted upon one or more of the Defendants' actions.

92.     Plaintiffs suffered injury as a proximate result thereof.

93.     One or more of the Defendants gained an advantage at the expense of the Plaintiffs.

94. Plaintiffs have suffered injury as a result of the acts or omissions of Defendants.

95. Irreparable harm will occur to Plaintiffs as a result of the wrongful acts of Defendants.

96. There is no adequate remedy at law.

97. Plaintiffs has been damaged and seeks compensation for its damages in addition to injunctive relief.

## COUNT VIII
## CORRECTION OF INVENTORSHIP / ASSIGNMENT OF PATENT RIGHTS

98. I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

99. One or more of the Defendants have filed patent applications and/or obtained patents on inventions for which Plaintiffs individuals are the inventors or joint inventors.

100. One or more of the Defendants have filed patent applications and/or obtained patents on inventions for which Plaintiffs are entitled to assignment.

101. Plaintiffs employees are the inventor(s) or co-inventor on the patent because they contributed in a significant manner to the conception and or reduction to practice of the invention and made a contribution to the claimed invention that is significant in quality, when measured against the dimension of the full invention.

102. Plaintiffs are the assignees of the patent as set forth in the Confidentiality Agreement.

103. The inventorship should be corrected under 35 USC §116 of the Patent Statute.

104. Assignment to Plaintiffs should be executed.


## COUNT IX
## INTERFERENCE WITH ACTUAL OR PERSPECTIVE
## CONTRACTUAL / BUSINESS RELATIONSHIPS

105. I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

106. Plaintiffs had a valid and enforceable Confidentiality agreement with one or more of the Defendants in building a perspective business relationship. Defendant Central knew about the agreement.

107. Defendant Central intentionally induced the Defendant Four Paws to breach the agreement.

108. Defendants were not justified in their actions.

109. Plaintiffs were damaged as a result of the wrongful inducement to breach the Agreement.

110. Plaintiffs have been harmed.

111. Plaintiffs have suffered injury as a result of the acts or omissions Defendants.

112. Irreparable harm will occur to Plaintiffs as a result of the acts or omissions of Defendants.

113. There is no adequate remedy at law.

114. Plaintiffs have been damaged and seek compensation for damages in addition to injunctive relief.


## COUNT X
## FALSE MARKING: THE '206 PATENT

115. I Did It realleges and incorporates into this section the preceding paragraphs of this complaint.

116. Without the consent of the Plaintiffs, Defendants marked upon, affixed to, or used in advertising in connection with omnidirectional reflective retractable pet leashes made, used, offered for sale, and / or sold by Defendants, Plaintiff's '206 Patent. See Exhibit M, see portion of same below:



117. Defendants did so with the intent of deceiving the public and inducing them to believe that the omnidirectional reflective retractable pet leashes were made, offered for sale, sold, or imported into the United States by or with the consent of the Plaintiffs.

118. Despite their knowledge of patent law and that Defendants have not received Plaintiff's consent in using Plaintiff's '206 Patent, Defendants have and continue to falsely mark

and/or sell (or cause to be marked and/or sold) their products as being covered by the '206 Patent.

119.     Defendants knew or reasonably should have known that marking and/or selling their products with the '206 Patent without consent from Plaintiffs violated Federal patent marking laws which authorize marking only with the consent of the patentee, the Plaintiffs.

120.     Defendants have violated 35 U.S.C. §292(a) by marking and/or selling (or causing to be marked and/or sold), with intent to deceive the public, the packaging of Defendant's omnidirectionally reflective retractable pet leash products with the '206 Patent notice marking.

121.     Plaintiffs have suffered a competitive injury as a result of a violation of this section as Plaintiffs makes, sells, and offers for sale competitive pet leashes.

122.     Plaintiffs have suffered a competitive injury as a result of a violation of this section as Plaintiffs ability to license or assign the '206 Patent to other third parties has been ruined or diminished.

123.     Irreparable harm will occur to Plaintiffs as a result of the acts of Defendants.

124.     There is no adequate remedy at law.

125.     Plaintiffs have been damaged and seek compensation for damages in addition to injunctive relief.


## COUNT XI
## FALSE MARKING: THE '399 PATENT

126.     I Did It realleges and incorporates into this section the preceding paragraphs of

this complaint.

127.    Without the consent of the Plaintiffs, Defendants marked upon, affixed to, or used in advertising in connection with omnidirectional reflective retractable pet leashes made, used, offered for sale, and / or sold by Defendants, Plaintiff's '399 Patent.  See Exhibit M, see portion of same below:



128.    Defendants did so with the intent of deceiving the public and inducing them to believe that the omnidirectional reflective retractable pet leashes were made, offered for sale, sold, or imported into the United States by or with the consent of the Plaintiffs.

129.    Despite their knowledge of patent law and that Defendants have not received Plaintiff's consent in using Plaintiff's '399 Patent, Defendants have and continue to falsely mark and/or sell (or cause to be marked and/or sold) their products as being covered by the '399 Patent.

130.    Defendants knew or reasonably should have known that marking and/or selling their products with the '399 Patent without consent from Plaintiffs violated Federal patent marking laws which authorize marking only with the consent of the patentee, the Plaintiffs.

131.    Defendants have violated 35 U.S.C. §292(a) by marking and/or selling (or causing

to be marked and/or sold), with intent to deceive the public, the packaging of Defendant's omnidirectionally reflective retractable pet leash products with the '399 Patent notice marking.

132.  Plaintiffs have suffered a competitive injury as a result of a violation of this section as Plaintiffs makes, sells, and offers for sale competitive pet leashes.

133.  Plaintiffs have suffered a competitive injury as a result of a violation of this section as Plaintiffs ability to license or assign the '399 Patent to other third parties has been ruined or diminished.

134.  Irreparable harm will occur to Plaintiffs as a result of the acts of Defendants.

135.  There is no adequate remedy at law.

136.  Plaintiffs have been damaged and seek compensation for damages in addition to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully asks this Court to enter judgment for Plaintiffs and against Defendants and to grant Plaintiffs the following relief:

(a) A judgment pursuant to 35 U.S.C. § 271 finding that Defendants has / is infringing the '445 Patent;

(b) An order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from infringing the '445 Patent;

(c) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiffs for Defendant's infringement of the '445 Patent and an accounting to determine the proper

amount of such damages;

(d) A judgment pursuant to 35 U.S.C. § 271 finding that Defendants has / is infringing the '206 Patent;

(e) An order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from infringing the '206 Patent;

(f) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiffs for Defendant's infringement of the '206 Patent and an accounting to determine the proper amount of such damages;

(g) A judgment pursuant to 35 U.S.C. § 271 finding that Defendants has / is infringing the '399 Patent;

(h) An order pursuant to 35 U.S.C. § 283 preliminarily and permanently enjoining Defendants from infringing the '399 Patent;

(i) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiffs for Defendant's infringement of the '399 Patent and an accounting to determine the proper amount of such damages;

(j) A three-fold increase in damages as a result of Defendant's willful, wanton, and deliberate acts of infringement;

(k) A decree that Defendants have falsely marked products in violation of 35 U.S.C. § 292;

(l) An award of monetary damages, pursuant to 35 U.S.C. § 292, including an accounting for any falsely marked products not presented at trial and an award by the Court of additional

damages for any such falsely marked products;

(m) An award pursuant to 35 U.S.C. § 284 of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

(n) An award pursuant to 35 U.S.C. § 285 of Plaintiff's attorneys' fees incurred in this action;

(o) An order directing the recall and destruction of any and all existing unsold direct delivery applicator assemblies and products of Defendants that infringe the '445 Patent;

(p) An order directing the recall and destruction of any and all existing unsold omnidirectional reflective retractable pet leash assemblies and products of Defendants that infringe the '206 Patent;

(q) An order directing the recall and destruction of any and all existing unsold omnidirectional reflective retractable pet leash assemblies and products of Defendants that infringe the '399 Patent;

(r) An order directing that Defendants disclose and assign to Plaintiffs all inventions and discoveries, whether patentable or not, resulting from or arising out of Defendants' activities stemming from said Plaintiffs' confidential disclosure to Defendants, pursuant to Paragraph 3C of the Confidentiality Agreement;

(s) Preliminary and permanent injunctive relief; and

(t) Any and all other relief that this Court deems appropriate.


**<u>JURY DEMAND</u>**

I Did It requests a trial by jury on all issues so triable.

Dated: October 9, 2013

I Did It, Inc.
By Counsel,

_____

Ernest D. Buff
Ernest D. Buff & Associates, LLC
231 Somerville Road
Bedminster, NJ 07921
EBuff@EDBuff.com
Tel: (908) 901-0220
Fax: (908) 901-0330
*Counsel for Plaintiff*