```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

NITE GLOW INDUSTRIES INC., et    .
al.,                             .
                                 .
        Plaintiffs,              .  Case No. 12-cv-04047
                                 .
vs.                              .  Newark, New Jersey
                                 .  November 5, 2015
CENTRAL GARDEN & PET COMPANY,    .
et al.,                          .
                                 .
        Defendants.              .
```

```
                     TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE CATHY L. WALDOR
                  UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiffs:     ERNEST D. BUFF, ESQ.
                        Ernest D. Buff & Associates, LLC
                        231 Somerville Road
                        Bedminster, NJ 07921
                        (908) 901-0220
                        Email: Ebuff@edbuff.com

                        JAMES SIMON COONS, ESQ.
                        Ansa Assuncao, LLP
                        Two Tower Center Boulevard
                        Suite 1600
                        East Brunswick, NJ 08816-1100
                        (732) 993-9858
                        Email: James.coons@ansalaw.com

                        DAVID B. JINKINS, ESQ.
                        Thompson Coburn LLP
                        One US Bank Plaza
                        St. Louis, MO 63101-1693
                        (314) 552-6304
                        Email: DJinkins@ThompsonCoburn.com

```
 1                              KATHERINE E. COLVIN, ESQ.
                               Thompson Coburn LLP
 2                             One US Bank Plaza
                               St. Louis, MO 63101-1693
 3                             (314) 552-6570
                               Email: Kcolvin@thompsoncoburn.com
 4
                               STEVEN E. GARLOCK, ESQ.
 5                             Thompson Coburn LLP
                               One US Bank Plaza
 6                             St. Louis, MO 63101-1693
                               (314) 552-6146
 7                             Email: Sgarlock@thompsoncoburn.com

 8
     For the Defendants:       RUSSELL SCOTT BURNSIDE, ESQ.
 9                             Greenberg, Dauber, Epstein & Tucker,
                               PC
10                             One Gateway Center
                               Suite 600
11                             Newark, NJ 07012-5311
                               (973) 643-3700
12                             Email: Rburnside@greenbergdauber.com

13                             THOMAS B. SLOCUM, ESQ.
                               Greenberg, Dauber, Epstein & Tucker,
14                             PC
                               One Gateway Center
15                             Suite 600
                               Newark, NJ 07012-5311
16                             (973) 643-3700
                               Email: Tslocum@greenbergdauber.com

17
     Audio Operator:
18
     Transcription Service:       KING TRANSCRIPTION SERVICES
19                                3 South Corporate Drive, Suite 203
                                  Riverdale, NJ  07457
20                                (973) 237-6080

21   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
22

23

24

25
```

 1               (Commencement of proceedings at 3:00 P.M.)

 2

 3          THE COURT:  All right.  We are on the record.  It

 4 is 3 o'clock, November 5th, 2015, in 12-4047, Nite Glow

 5 versus Central.

 6          And let's do appearances, please, for plaintiff.

 7          MR. COONS:  Your Honor, James Coons, Ansa Assuncao,

 8 on behalf of the plaintiffs.

 9          THE COURT:  Defendants.  Oh, I'm sorry, we've got

10 to --

11      (Simultaneous conversation)

12          MALE SPEAKER:  Just all of them.

13          MR. JINKINS:  David Jinkins.

14          MR. GARLOCK:  Steve Garlock.

15          MS. COLVIN:  Katie Colvin.

16          MR. BUFF:  Ernest Buff.

17          THE COURT:  Thank you.  I wasn't paying attention.

18          May I have appearance of the defendants.

19          MR. BURNSIDE:  Your Honor, Russell Burnside and

20 Thomas Slocum.

21          THE COURT:  So you can sit down and relax.  Let's

22 just settle into -- we've had hours of discussions with

23 regard to 30(b)(6) topics, 47 areas of inquiry were set forth

24 with objection.  Some of them were agreed to.  Some of them I

25 informally ruled upon or limited.

1            Does anybody want to put their notes on the record?

2            ATTORNEY FOR PLAINTIFF:  Yes, Your Honor, we're --

3            THE COURT:  And if I disagree, I'll let you know.

4            MR. JINKINS:  I think the people who can do it best

5    for us, they are Katie and James.  They were taking the notes

6    while other people were just randomly talking.

7            THE COURT:  Okay.  And then you guys can correct

8    where anybody disagrees.

9            MS. COLVIN:  So I think on Number 1, we previously

10   discussed with Your Honor that we're going to have an

11   interrogatory and then we're also going to have someone that

12   might testify as to corporate structure and the interrelation

13   of the subsidiaries, but we wanted also to do this one on the

14   record.  So I don't know if we needed to have more argument

15   about it.

16           MR. JINKINS:  You're on the record right now.

17           MS. COLVIN:  Great.

18           MR. COONS:  So -- yes, that's what my notes reflect

19   also, Your Honor, that we will submit to them an

20   interrogatory on this subject, but that they were going to

21   produce somebody to talk about the corporate structure and

22   the interrelationship --

23           THE COURT:  Yes.

24           MR. COONS:  -- of the subsidiaries.

25           THE COURT:  I think that's -- that was the final

1    agreement on that.  Right?  On Number 1?

2              MR. BURNSIDE:  Yes, Your Honor.

3              THE COURT:  Okay.  So that's it.

4              Number 2.

5              MS. COLVIN:  With respect to Number 2, I think that

6    we agreed that defendants would produce a deponent to testify

7    as to the general organization and structure for Four Paws

8    from D January 2008 to present.

9              MR. JINKINS:  And pointing out the difference

10   there, Your Honor, is we had 2004.  We've moved that to 2008.

11             THE COURT:  Number 3?  That was agreed to?

12             MS. COLVIN:  With respect to Number 3, defendants

13   were to provide a separate certification that there were no

14   prelitigation board minutes about what was discussed in Topic

15   Number 3.

16             THE COURT:  Number 4?

17             MS. COLVIN:  Topic Number 4, we discussed that

18   defendants would provide a deponent to discuss any sort of

19   loans that were between Four Paws and Central and also

20   licensing transactions where Central bound Four Paws in 2008

21   and 2009.

22             THE COURT:  And product development?

23             MS. COLVIN:  Yes.

24             MR. BURNSIDE:  Your Honor, let me -- I think one of

25   those might be backwards.  I may have misheard it.

1          I thought that the license agreements would be

2     those which Four Paws had committed to which bound Central.

3     They get --

4          MS. COLVIN:  Yeah, I think I have that backwards.

5        (Simultaneous conversation)

6          MR. JINKINS:  That's correct, Your Honor.

7          MS. COLVIN:  That's correct.  Sorry about that.

8          MR. BURNSIDE:  And, Judge, I -- as a matter of

9     just, I guess, procedure, obviously, some of these were your

10    decisions informally in conference.  I would like the record

11    to reflect which is your decision that, respectfully, was

12    imposed on the defendants, as opposed to those that we agreed

13    with.

14         THE COURT:  Yes.

15         MR. BURNSIDE:  So do you want me to --

16         THE COURT:  I imposed the loans product development

17    2008 and 2009 on defendant licensing.  That was my informal

18    ruling.

19         If you want to make an argument for preservation

20    purposes, you're welcome to do that.  But read 4 into the

21    record, then -- or whichever number you're arguing.  Same

22    goes for the other side.

23         MR. JINKINS:  And we would be willing to -- you do

24    whatever you want.  But we'd be willing to make an agreement

25    that you have not waived your arguments by not making them

1    here today, and we can revisit them later.  I have this

2    concern that we might all start arguing for the next three

3    hours.

4              THE COURT:  It's your choice.

5              MR. COONS:  I mean if you -- if you're talking

6    about preserving something for appeal, that's fine.  I don't

7    want to have to reargue the fact that --

8              THE COURT:  No, no, I think this is preservation --

9              MR. COONS:  -- they have to give us these

10   documents.

11             THE COURT:  -- for appeal.  Yeah.

12             MR. COONS:  No problem.

13             MR. BURNSIDE:  Right, I just want to make it clear

14   what Your Honor has ordered.

15             THE COURT:  Okay.

16             MR. BURNSIDE:  And in most cases, it was despite

17   my -- my cogent arguments to the contrary, and I

18   understand --

19             THE COURT:  And persuasive.

20             MR. BURNSIDE:  Thank Your Honor, and I understand

21   sometimes I win and sometimes I don't.  I just want to make

22   clear what I did win and what I didn't win and -- and as

23   opposed to what was agreed to between the parties with your

24   counsel.

25             THE COURT:  Okay.  And, again, you're welcome to

1   make a record on any of these points.

2           MR. BURNSIDE:  Thank Your Honor.

3           THE COURT:  Number 5.

4           MS. COLVIN:  With respect to Topic Number 5.

5           THE COURT:  Which I indicated was marginally

6   relevant for the future.

7           MS. COLVIN:  Yes, the defendants are to identify a

8   witness to attest to this and to be deposed on this topic.

9   Well, Your Honor noted that this was marginally relevant.

10          THE COURT:  Oh, good, thank you.

11          MR. BURNSIDE:  Well, Your Honor, I think, though,

12  that if I recall what we said -- and I'm happy to be

13  corrected if I'm wrong, I thought that you said that the

14  topic would be pre Idea Central, as if there was any kind of

15  generally accepted approach on this topic, as opposed to

16  side --

17          THE COURT:  Yes, this is pre formation of what I

18  understand to be the 2010 Idea Central.

19          MR. JINKINS:  There we go.  And just to be clear,

20  pre naming of Idea Central.  The whole concept --

21          THE COURT:  Yes.

22          MR. COONS:  -- is that this was there and that it

23  was at that point that they named it, but they had been doing

24  this, and that is what we're talking about.

25          THE COURT:  Idea Central without a name.

1              Number 6.

2              MR. BURNSIDE:  I'm sorry, Your Honor.

3              THE COURT:  Go ahead.

4              MR. BURNSIDE:  Just to make -- make it clear.

5              THE COURT:  That was my -- my imposition.

6              MR. BURNSIDE:  Yes, thank Your Honor.

7              THE COURT:  I'm sorry.  My informal ruling.

8              MR. JINKINS:  Did I help at all, Your Honor?

9              THE COURT:  No.  Number 6.

10             MS. COLVIN:  On Topic Number 6, the -- Your Honor's

11   informal ruling was that defendants were to identify a

12   witness to be deposed on this topic, that plaintiffs are

13   entitled to know the location of the servers, et cetera, with

14   respect to Topic Number 6.

15             THE COURT:  Four Paws only.

16             MR. JINKINS:  Right --

17             MS. COLVIN:  Yes.

18             MR. JINKINS:  And a certification as to the central

19   entities.

20             That's correct, yes, Mr. Burnside?

21             THE COURT:  And that was combined, my ruling and

22   some amount of agreement.

23             MS. COLVIN:  Yes.

24             THE COURT:  Once we narrowed it to Four Paws.

25   Right?

1           MR. COONS:  Right.

2           MR. BURNSIDE:  I'm sorry, Your Honor.  I was trying

3    to read Number 6.

4           Could you repeat that?

5           THE COURT:  No, go ahead, you can read.

6           MR. BURNSIDE:  No, no, I was reading to myself

7    because I think that we're not quite on the same, the

8    plaintiffs and I, but I missed what you just said.  I

9    apologize.

10          THE COURT:  What I said is I thought that once we

11   narrowed it to Four Paws, there was an agreement that the

12   location of the servers could be identified.

13          MR. BURNSIDE:  Yes, Your Honor, that is what we're

14   going to endeavor to do.

15          THE COURT:  And what was the certification aspect

16   again?  That was in a different --

17          MR. JINKINS:  Just to be clear, this is for

18   defendant.  So instead of going through all this for Central,

19   they can just certify that nothing's been wiped from

20   Central --

21          THE COURT:  From Central.

22          MR. JINKINS:  -- these servers have all been

23   going --

24          THE COURT:  And that touches upon another --

25          MR. JINKINS:  -- have all been maintained.

 1              THE COURT:  -- request as well.

 2              MR. JINKINS:  Right, as opposed to Four Paws where

 3   they're going to produce somebody to talk about --

 4              THE COURT:  I see.

 5              MR. JINKINS:  -- the servers and what they did to

 6   look for documents and so forth.

 7              MR. COONS:  Central and Central Life Sciences.

 8              THE COURT:  Did I impose that completely?  I

 9   thought that you agreed once it was narrowed to Four Paws?

10              MR. JINKINS:  He probably objected strenuously and

11   intelligently and --

12              MS. COLVIN:  The parties agreed to Central and

13   Central Life Sciences as to a certification those servers

14   have been searched and ...

15              MR. BURNSIDE:  Your Honor, my -- my -- not to open

16   up a new round of debate and I'm hoping that ultimately this

17   is not an issue, but there is a lot more detail in Number 6,

18   employment history and that kind of thing about people with

19   contact information.  I'm hoping that much of this will be

20   moot at some point and/or that we'll reach an agreement, but

21   I -- I do have issues with the breadth of Number 6, not with

22   the -- not with the underlying concept of Number 6.

23              But I think and hope that that will not be

24   something Your Honor's going to have to deal with anytime

25   soon.

1          THE COURT:  Meaning the additional information, if,

2    in fact, there were discarded, destroyed, or wiped.

3          MR. BURNSIDE:  Yeah, and I'm hoping that we're not

4    ultimately going to have to deal with this.

5          THE COURT:  Well, then you're right.  That's a

6    two-part.  So let's preserve the second part, if you come to

7    find out that there is some amount of destruction or wiping

8    out or we're going to have to discuss it in terms of when,

9    who, what, where, and why.

10          MR. BURNSIDE:  Understood.

11          THE COURT:  So it's not really -- you're

12    anticipating that that won't be necessary.

13          MR. BURNSIDE:  I'm hoping.

14          THE COURT:  All right.  So we'll revisit that, if

15    it becomes necessary.  And I'm sure your adversary will

16    revisit it in motion as well.

17          MR. COONS:  Fine, Your Honor.

18          THE COURT:  Number 7.

19          MS. COLVIN:  On Topic Number 7, the parties agree

20    that this would be the topic of an interrogatory.

21          THE COURT:  Number --

22          MR. BURNSIDE:  Your Honor, before we -- if I could

23    just put a general comment.

24          THE COURT:  Yes.

25          MR. BURNSIDE:  The fact that the plaintiffs have

1   agreed ostensibly with our support to convert something into

2   interrogatories, is not a waiver of our underlying objection,

3   with respect to --

4               THE COURT:  No.

5               MR. BURNSIDE:  Okay.  Fair enough.  Thank you.

6               THE COURT:  Number --

7               MR. JINKINS:  Well, could I get clarification on

8   that?  Does that mean that after all this, then they can just

9   object and not answer at all on this stuff?

10              THE COURT:  No.

11              MR. JINKINS:  All right.

12              THE COURT:  That -- well, I didn't take that to

13  mean that they'll serve you an interrogatory and you'll

14  answer objection.  Or you could answer objection and then

15  answer, and that would preserve your objection.

16              MR. BURNSIDE:  Well, I mean my concern, Your Honor,

17  if you -- if we're looking at Number 7, is I still maintain

18  it's utterly irrelevant, and it will be burdensome to start

19  educating someone on all of the payroll apparatus -- for all

20  of these different entities.  And we also haven't really

21  addressed, in this one, at least, whether this would apply to

22  Four Paws, Central Life Sciences or the entire company of

23  Central.

24              If we're limiting it to Central Life Sciences and

25  Four Paws, you know, that takes care of the burden issue.

1  But it doesn't address the utter irrelevancy of Number 7.

2  And that's still -- that's still going to be something that

3  we're going to raise and whether it's a 30(b)(6) or

4  interrogatories.  So I'm not sure how you want to deal with

5  that.  That's when I -- I guess I raised the issue of --

6          THE COURT:  Well, they're going to advance an

7  interrogatory.  You can preserve your objections by

8  objecting, but I'm ordering you to answer.

9          Number 8.

10          MS. COLVIN:  On Topic Number 8, we informally

11  discussed with Your Honor that this was wrapped up with Topic

12  Number 2, and this goes to Four Paws' general organization,

13  structure from January 2008 to present.

14          THE COURT:  So this is going to be rolled up into 2

15  in terms of the 30(b)(6).

16          MR. BURNSIDE:  Correct.

17          MR. COONS:  Yes, but this specifically talks about

18  the cessation of business activities, wind-up, and

19  dissolution of Four Paws and whether Four Paws continues and

20  what, you know, Central's role is in.  And I'm happy to

21  combine those, if that's what we mean in the sense of rollup.

22          THE COURT:  Yes.

23          MR. COONS:  That's great, thank you, Your Honor.

24          MR. BURNSIDE:  Your Honor, if I could just -- I

25  think I need to put this on the record --

 1          THE COURT:  Go ahead.

 2          MR. BURNSIDE:  -- so that my silence is not

 3  misconstrued.

 4          I think that --

 5          THE COURT:  I don't think you've ever been silent,

 6  so I don't see how that could be misconstrued.

 7          MR. BURNSIDE:  I am paid by the word, Your Honor.

 8          THE COURT:  Go ahead.

 9          MR. BURNSIDE:  Your Honor, I do think that there is

10  some either misunderstanding because of the use of certain

11  terminology as to what happened to Four Paws.  I just don't

12  want the use of the word "dissolution" to be something that

13  appears as if I agreed to it.

14          THE COURT:  Good.

15          MR. BURNSIDE:  There is a -- there are issues as to

16  how to characterized the transformations I'll call Four Paws.

17  And I just don't want it to appear that I am agreeing that it

18  was dissolved.

19          THE COURT:  Good.  Okay.

20          MR. JINKINS:  Perfect.  Great -- great conversation

21  for a deposition.

22          THE COURT:  Number 9, I believe you agreed -- I

23  don't mean to take your breath away -- to an interrogatory.

24          MS. COLVIN:  Yes, that is correct, Your Honor.

25          THE COURT:  And that was by agreement.

1           Go ahead, 10.

2           MS. COLVIN:  Same with Number 10, agreement to an

3    interrogatory.

4           MR. BURNSIDE:  Well, Your Honor, again, I hate to

5    be the fly in the ointment, which apparently I'm going to be,

6    but we really did not discuss or reach an agreement on some

7    of the -- what I keep referring to as the minutia of detail.

8    For example, Number 9, solvency, I don't have any idea what

9    solvency is going to mean to them versus what it means to me

10   and what it might mean to a witness.  I don't see how

11   dividends have anything to do with any of this.

12          So I am not sure how you would like to deal with

13   that, but --

14          THE COURT:  Well, you'll mark your objection to the

15   interrogatory, and then you'll answer.

16          10?

17          MR. JINKINS:  That was already discussed.  Same

18   interrogatory.

19          THE COURT:  Oh, right, I'm sorry, we addressed

20   that.

21          10, do you want to put anything on the record?

22          MR. BURNSIDE:  Well, I thought we -- well, I do.  I

23   mean, I -- I don't see generally what Al Simon's current

24   role, how it's relevant.  I understand Your Honor feels it

25   is.  But in particular, the bank and the accountholder for

1   the accounts on which his salary, if any, or consulting fees,

2   if any, or other compensation, if any, are drawn.  I just

3   don't see how that is remotely relevant to this.  And I think

4   it should have -- and if it was relevant, it should have been

5   asked at his deposition.

6               THE COURT:  All right.

7               MR. BURNSIDE:  You --

8               THE COURT:  You'll oppose the interrogatory, and

9   you object.  It'll be answered.

10              I think in terms of relevant, I found it to be

11  relevant to his authority and agency.

12              MR. BURNSIDE:  But, Your Honor, talk about the

13  current role here, not what -- not his role back in 2008 and

14  2009.

15              THE COURT:  Right.

16              MR. BURNSIDE:  Okay.  Understood.

17              THE COURT:  Okay.  11.

18              MR. JINKINS:  My notes are sketchy on this one --

19  okay, I don't really have notes.

20              But if I recall correctly, I think the first part

21  of 11, we were going to posit as an interrogatory, and they

22  would produce somebody for the second part of Number 11 as --

23              THE COURT:  Central and Four Paws only.

24              MR. JINKINS:  Right.

25              MS. COLVIN:  As it pertains to research

1    development, manufacturing, and/or marketing potential new

2    products.  I don't believe we had a ruling on the last --

3    very, very last portion of Topic Number 11.

4              THE COURT:  The circumstances by which Central

5    would make a business decision for Four Paws or would

6    otherwise veto?  Four Paws --

7              MR. JINKINS:  Right, Your Honor.

8              MR. COONS:  Yes.

9              THE COURT:  You object to that?

10             MR. BURNSIDE:  Well, I do, but I understand

11   Your Honor would overrule that, so I understand Your Honor's

12   ruling.

13             MR. JINKINS:  I do now remember how we talked about

14   this.  We decided this would actually get rolled up in with

15   the 30(b)(6) deposition topic of the Idea stuff.

16             THE COURT:  Yes.

17             MR. JINKINS:  So we get it one way or the other.

18             MR. BURNSIDE:  And, Your Honor, I guess we should

19   also make clear -- I mean, I want to make clear, at least,

20   that when we talk -- when we use the word "Central," we --

21   you decided -- that was the holding company only.

22             THE COURT:  Yes.

23             MR. BURNSIDE:  Thank you.

24             MR. JINKINS:  Do we have any corrections where we

25   want to go back and ask for Central Life?  Katie?  Instead of

 1  just Central, are there any that we specifically want to talk

 2  about Central Life?

 3            MS. COLVIN:  Yes.  And --

 4            MR. JINKINS:  Just one moment, Your Honor.  I know

 5  it's not prevalent throughout, but I remember a couple of

 6  that ...

 7            THE COURT:  I don't think Central Life came up in

 8  that one.

 9            MR. JINKINS:  No, not in that one.

10            THE COURT:  Yeah.

11            MR. COONS:  Just wanted to make sure we didn't miss

12  one.

13            THE COURT:  Okay.

14            MR. JINKINS:  We'll check at the end, Your Honor.

15  How about that?  And if you'll -- Katie, pay attention, you

16  want to --

17            14, what did we do?  I know I was confused on that

18  one.

19            MR. COONS:  It was --

20            MS. COLVIN:  I don't think --

21            MR. COONS:  I think there was no resolution on that

22  and that we agreed to disagree.

23            THE COURT:  What are we talking about?  14?

24            MR. COONS:  Yeah, that's correct, Your Honor,

25  Number 14.

 1          THE COURT:  I have:  Agreed, subject to privilege

 2  waiver.

 3          MR. COONS:  Yes.

 4          THE COURT:  Parties to discuss.

 5          MR. BURNSIDE:  Yeah, and, Your Honor, I'd like to

 6  put on the record this -- this issue of the privilege waiver,

 7  just so that it's clear.  I mean, I don't know if there'll be

 8  future disputes on this, but I just want to make sure that

 9  the record is clear, at least I will be very succinct and

10  quick.

11          We -- we had -- we informed the defendant -- the

12  plaintiff's counsel on or about September 15th that

13  conceptually, we were willing to waive privilege with respect

14  to Central's patent counsel.

15          I do -- I also made clear we have to -- we have

16  protocols of what that means, and we will endeavor to do

17  that.  And then once we do, obviously, I'm going to have to

18  run it by the -- that counsel.  I mean, he's got to have some

19  input as well.  So if we can agree on protocols, which we'll

20  attempt to do, and then we'll take the second or third steps

21  and -- and hope -- hopefully at the end of the day, we will

22  have an agreement, and the waiver will be put in place.

23          THE COURT:  And if not, you'll come back to me, and

24  we'll have a discussion.

25          MR. BURNSIDE:  If need be.

1          MR. JINKINS:  And just two things, Your Honor.  He

2  said September 15th.  I think he meant October 15th.

3          MR. BURNSIDE:  I'm sorry.  Yes, October.

4          MR. JINKINS:  It doesn't really matter on that

5  issue.

6          Two, obviously, we keep hearing about this waiver,

7  but until I see something in writing to actually know what it

8  is, I can't comment whether it's workable or not workable.

9          So I understand he's working on it, and the sooner

10  we can get that, the better.

11          THE COURT:  Okay.

12          MR. JINKINS:  And then 3, obviously, there are

13  mechanisms that we all know when defending a deposition,

14  where if you think something is privileged when a question is

15  asked, that you can object and politely ask your witness not

16  to answer.

17          THE COURT:  15.

18          MR. JINKINS:  I think, over my objection,

19  Your Honor had said that they can wait --

20          THE COURT:  After Markman.

21          MR. JINKINS:  -- until after Markman for 15.

22          THE COURT:  And your objection is noted.

23          MR. JINKINS:  And was well thought out and ...

24          16.

25          THE COURT:  I -- I ruled over objection, you were

|Hearing
|12-cv-04047, November 5, 2015

 1    to produce a witness.

 2              MR. BURNSIDE:  Your Honor, I -- respectfully,

 3    Your Honor, I believe the parties agreed on 16.

 4              THE COURT:  Sorry.  Sorry.  Parties agreed on

 5    Number 16.

 6              MR. BURNSIDE:  Wait a minute, we didn't really

 7    object to that one.  I --

 8              THE COURT:  You have one in the agreement column.

 9              MR. BURNSIDE:  We did.  We all agreed.  That's

10    great.

11              THE COURT:  Same with 17, is that by agreement?

12              MR. BURNSIDE:  No, 17 is over our -- well,

13    actually, yes, I conceded to that, we'd wait until after the

14    Markman hearing.

15              THE COURT:  After Markman, you do concede.

16              MR. BURNSIDE:  Yeah.

17              THE COURT:  18, I think you agreed is okay?  Or did

18    I rule?

19              MR. BURNSIDE:  No, you overruled our --

20              THE COURT:  I ruled 18 was okay.  So make your

21    objection.  18 and 19, I think I overruled you.

22              MR. BURNSIDE:  Yes, you did.  All right.

23              MR. JINKINS:  20, I think you agreed to.  Is that

24    correct?

25              MR. BURNSIDE:  Correct.

1          THE COURT:  You argued relevance on both.

2          MR. BURNSIDE:  I'm sorry, Your Honor, did you want

3   to -- put something on the record?  I just noted I --

4          THE COURT:  Yes.

5          MR. BURNSIDE:  Oh, okay.  Fine, I'll ...

6          THE COURT:  It's helpful to me for the future that

7   I know as well.

8          MR. BURNSIDE:  Understood.  Okay.

9          Well, in my argument in Number 17 was that the --

10          THE COURT:  18, 19.

11          MR. BURNSIDE:  Oh, okay.  I'm sorry.

12          THE COURT:  18's manufacture, manufacturer,

13   products.

14          MR. BURNSIDE:  I'm going back in time.

15          THE COURT:  You said it was -- we're having a long

16   day together.

17          MR. BURNSIDE:  Yes.  Okay.  So my concern about

18   Number 18 was that the identification of the facilities is

19   irrelevant, and I thought that the word "manufacture" itself

20   was too broad and too ambiguous.

21          With respect to Number 19, I felt once again that

22   the diminutia [*sic*] or the minutia of that was unclear and

23   too broad, and I understand Your Honor's decision.

24          THE COURT:  Okay.  Objection noted.

25          20, 21, 23, I think you agreed.

 1          MR. COONS:  Your Honor, I believe we agreed on 20.

 2  The parties agreed on Number 20.  The parties agreed on 21.

 3  And that over plaintiff -- defendant's objection, Your Honor

 4  instructed defendants to produce someone for 23.

 5          THE COURT:  Okay.  Oh, you're right.

 6          MR. JINKINS:  And I believe over objection -- or

 7  you may have actually agreed, but I think you agreed to some,

 8  objected to some, but either way, we get 24.

 9          THE COURT:  24.  That was with objection, but --

10          MR. BURNSIDE:  With objection as to some of the

11  information.

12          THE COURT:  Okay.

13          MR. BURNSIDE:  Not all of the information.  We did

14  not object to sales.

15          THE COURT:  Right.

16          MR. BURNSIDE:  We did not object to revenue, which

17  in my mind is no different than sales.  We did not object to

18  the net profits.

19          We objected to, again, the -- the ambiguity and the

20  minutia of costs per unit, incremental costs, variable costs,

21  fixed costs.

22          THE COURT:  And your objection is burdensome and

23  relevance?

24          MR. BURNSIDE:  Well, it's burdensome, relevance,

25  and it's -- by definition, net profits is the -- the

1   difference between sales and costs.  So you're -- and you can

2   easily figure out what the total costs were.  Why they need

3   to be fixed, variable, incremental and so forth -- and I'm

4   not even sure incremental is an acceptable GAAP term.  But

5   putting that aside, I thought it was ambiguous, and I thought

6   it was too much minutia, given that sales and profits should

7   provide the information that's needed by their experts.

8           But I understand your position, Your Honor.

9           THE COURT:  You don't say understand.  You can say

10   you still disagree.

11          26.

12          MR. BURNSIDE:  It's my polite way of saying I still

13   disagree.

14          THE COURT:  That's like respectfully.  Right?

15          MR. BURNSIDE:  I never use that word, Your Honor.

16   I learned a long time ago.

17          MR. JINKINS:  My good friend, the Congressman from

18   Tennessee.  I love that one.  You know, they're going to --

19          THE COURT:  Yeah, same thing.

20          MR. JINKINS:  -- as soon as they say that.

21          THE COURT:  Yes, same thing.

22          26.

23          MR. BURNSIDE:  Your Honor, that one had been

24   previously agreed upon, even before today.

25          THE COURT:  All right.

|Hearing
|12-cv-04047, November 5, 2015

1              MR. BURNSIDE:  Your Honor, I will note that the

2   agreement is to -- as Topic 26 was broken out into subparts

3   (A) through (E), and that's -- did not -- is -- it wasn't

4   agreed upon as originally drafted in the notice to produce.

5              THE COURT:  Okay.

6              MR. JINKINS:  Would you like us to read that into

7   the record, Your Honor?  Or can the parties just agree that

8   that's contained in the letter on page 19 that we've been

9   working under?

10             THE COURT:  (A) and (B).

11             MR. JINKINS:  (A) through (E).

12             THE COURT:  (A) through (E)?

13             MR. JINKINS:  (E), (E).

14             THE COURT:  Oh.  Okay.  (A) through -- oh.

15             30, top 10 licenses after objection.  On relevance

16   grounds and also on -- due to the fact that you didn't think

17   it added anything to figuring out the royalties.

18             I don't want to -- go ahead.

19             MR. BURNSIDE:  No, that's fine, Your Honor.  That's

20   an adequate summary.

21             MR. JINKINS:  Plaintiffs have withdrawn 31, 32, 33,

22   stop me when -- to stop.  34, 35, 36.

23             MALE SPEAKER:  Stop.

24             THE COURT:  37.

25             MR. COONS:  That was granted over defendant's

1  objection, Your Honor.

2          THE COURT:  That's correct.

3          MR. JINKINS:  38, Your Honor, I believe was to be

4  answered in an interrogatory.

5          THE COURT:  Right.  Was that over objection?  I

6  don't remember.

7          MR. BURNSIDE:  Your Honor, just give me one moment.

8          THE COURT:  Sure.

9          MR. BURNSIDE:  Well, Your Honor, yeah, I mean,

10  Your Honor, this is -- this is obvious -- look, in my mind,

11  it's obviously very broad, too broad, far afield.

12          I don't really think Central's email programs and

13  backup and all that is even at issue, and there's been no

14  issues raised, so I'm not so sure why this level of detail is

15  required.

16          But I understand that we're -- they're going to do

17  an interrogatory, and we'll --

18          THE COURT:  Yes.

19          MR. BURNSIDE:  -- we'll what we can do with it.

20          THE COURT:  Thank you.

21          39.  I think that might have been by agreement.

22          MR. JINKINS:  Yeah, it was, Your Honor.

23          THE COURT:  40, I said no.

24          MR. JINKINS:  Over our objection, Your Honor.

25          THE COURT:  Over your objection.

|Hearing
|12-cv-04047, November 5, 2015

1          41 through 45 were withdrawn.

2          MR. COONS:  Correct.

3          THE COURT:  And 46 and 47 certify.

4          MR. JINKINS:  Correct, Your Honor.

5          THE COURT:  Even though defendant objected.

6          MR. BURNSIDE:  Yes, Your Honor, I just --

7          THE COURT:  It's already in the interrogatories, I

8    believe, you raised that issue.  I asked for separate

9    certification.

10          Go ahead.

11          MR. BURNSIDE:  Yes, Your Honor, I just want to make

12   clear because I think there was some ambiguity when we were

13   discussing this that clearly Central became aware of the

14   facts and some of the details of these meetings that are

15   referred to in 46 and 47 when defendant first raised the

16   allegations in roughly March of 2012, and obviously, Central

17   has done an investigation for purposes of assisting counsel.

18          But my understanding is you want us to certify,

19   much like we did with the interrogatory answer, as to when --

20   as to what Central knew at the time of these meetings or in

21   and about the time of these meetings.

22          THE COURT:  Yes.  Yes.

23          MR. BURNSIDE:  Fair enough, thank you.

24          THE COURT:  Definitely.  All right --

25          MR. JINKINS:  Before we move forward, Your Honor, I

 1  also wanted to make it clear that for those topics that we

 2  are withdrawing, we believe that those topics are proper,

 3  and -- but for purposes of moving forward, we're withdrawing

 4  them for the time being.

 5            THE COURT:  Okay.  And that's without prejudice,

 6  obviously.

 7            MR. JINKINS:  Thank Your Honor.

 8            THE COURT:  I'm going to go off the record and take

 9  a call and come back out.  But in the meantime, if you will

10  review the circled items and see if you can't further come to

11  some agreement.

12            MR. JINKINS:  Do we have time to go down and get

13  water, Your Honor?

14      (Recess:  3:30 P.M. to 4:14 P.M.)

15            THE COURT:  We're back on the record in Nite Glow.

16  And we've resolved for the time being, the current motion to

17  compel and opposition, Docket 95 and 97, I think.

18            And we're going to put that resolution on the

19  record and terminate those motions -- that motion.

20            So who wants to address the list?

21            MR. JINKINS:  I will, Your Honor, David --

22            THE COURT:  Okay.

23            MR. JINKINS:  David Jinkins on behalf of plaintiff.

24            THE COURT:  Go ahead, Mr. Jinkins.

25            MR. JINKINS:  Referring to Document 95-13 filed

1    September 25th, 2015, a four-page document that was a

2    proposed order for things that we wanted, we have made

3    modifications to that document.

4             To the extent that anything has been withdrawn at

5    this point, we maintain that those are all documents and

6    information that we are entitled to, and it's our

7    understanding that our objections have been noted and that

8    this is all withdrawn without prejudice, and if we feel the

9    need to later, we may bring that back up.

10            THE COURT:  Yes.

11            MR. JINKINS:  That being said, trying to -- and I

12   think the best way to do it, Your Honor, is just to go

13   through and read it into the record on what we have.

14            THE COURT:  Okay.

15            MR. JINKINS:  Is that working for you, Your Honor?

16            THE COURT:  Yes, proceed.

17            MR. JINKINS:  Okay.

18            For (A), gross sales (*i.e.*, defendants' gross sales

19   and Central Life Science gross sales of each of the accused

20   products, solution -- and solution refills for the accused

21   products).

22            THE COURT:  And that applies, to be clear, only to

23   the accused product.

24            MR. JINKINS:  Yes, Your Honor, I modified the way

25   that it was previously written.

1           I will just go through these.

2           THE COURT:  Okay.

3           MR. JINKINS:  Mr. Burnside, if I make a mistake,

4  please feel free to interrupt; no reason to wait until the

5  end.  I am doing my best to try and get it correct.  And

6  we've removed obviously, the leash from (A).

7           For (B), net sales, defendants' and Central Life

8  Science, net sales of each of the accused products, solution,

9  and solution refills for the accused products, removing the

10 leash again.

11          For (C), cost of goods sold, defendants' and

12 Central Life Sciences' cost of goods sold, attributed to the

13 accused products, solution and solution refills for the

14 accused products.

15          For each of (A), (B), and (C), we have identified

16 the defendants and Central Life Science, but -- and

17 understanding is that for any sales by any companies or

18 subsidiaries of any of the accused products, those will be

19 identified.  We just -- at this time, it's our understanding

20 that those are the people selling the accused products.

21          We then skip all the way to -- did we keep (L) or

22 lose (L)?

23          (L) is in.  So (L) is audited, reviewed or compiled

24 corporate financial statements for both defendants and

25 Central Life Sciences.

 1              (M), for (M), we modified (M) so that we get

 2    licenses, patent licenses between the parties and any patent

 3    licenses granted and/or received by defendant and/or Central

 4    Life Science for flea and tick products and/or applicators

 5    and/or solution -- slash solution refills for the same.  And

 6    defendants will respond to this with 10 of the patent

 7    licenses, as we have discussed in other areas as well.

 8              The next one, we pulled (P), correct?  We're not

 9    doing (P)?

10              THE COURT:  No, (P) is no.

11              MALE SPEAKER:  (P) is withdrawn.

12              (R) is defendants and Central Life Science patent

13    royalty and patent license reports.  Defendants will provide

14    lists of all of the patent royalties that they are paying and

15    a list of all the patent licenses for which they are paid,

16    and we will then address further issues as to that, as they

17    come in.

18              Happy to discuss that in more detail, but I think

19    everybody knows what we're doing there.

20              (S), did we do that?  We're not doing (S).

21              We are not (T).

22              THE COURT:  Not you.  Not you.

23              MALE SPEAKER:  Not you either.

24              (V) and (W), we are not doing for the time being,

25    all of those are the time being.

|Hearing
|12-cv-04047, November 5, 2015

1           And we are doing (X).  (X) is the business plans

2   and/or investor presentations related to the accused

3   products, solution -- and solution refills for the accused

4   products with an indication of the date prepared and/or

5   presented.

6           On the record -- I don't know the answer to this --

7   there was proposed order for Interrogatory 17 and 14, but

8   that was not discussed at this time and so will not be

9   addressed as we sit here right now.

10          MR. BURNSIDE:  Your Honor, two clarifying points.

11  The very outset of the order says from fiscal years 2007 to

12  the present.  I thought we had previously agreed with

13  Your Honor's input that it would start 2008.

14          THE COURT:  2008.

15          MR. BURNSIDE:  And then whenever there's a

16  reference to defendants, I just want to make clear that we're

17  talking about Central corporate and Four Paws and Central

18  Life Sciences.

19          THE COURT:  Yes.

20          MR. BURNSIDE:  Okay.  Thank you.

21          MR. JINKINS:  But -- but with the understanding

22  that since we don't know the universe of all the -- as

23  they've said, various subs, if they have other people selling

24  the accused product, they have to identify those sales and

25  who's selling them as well.

1          THE COURT:  It's been represented that nobody else

2     is selling them, but if you come to find out that they are

3     being sold, obviously, you have to identify the company

4     and/or persons.

5          MR. BURNSIDE:  Understood, and agree.

6          MR. SLOCUM:  And, Your Honor, if I may ask a

7     clarifying point, with respect to subsection (r), little "r"

8     and the little that defendants will provide as to the

9     products on which -- on which they're receiving a royalty, on

10    which they're paying a royalty, that is limited to pet -- pet

11    products.

12         THE COURT:  Yes.

13         MR. SLOCUM:  I believe Mr. Jinkins said pet

14    products.  If he did, I apologize.  I just wanted to make

15    sure that that was clear.

16         THE COURT:  No, you're --

17         MALE SPEAKER:  Which would -- that's fine.  I

18    certainly wasn't trying to --

19         MR. SLOCUM:  That's it, thank you.

20         MALE SPEAKER:  And just to be clear, January 1st,

21    2008, just for the time --

22         THE COURT:  Okay.  Now, the only other issues

23    outstanding are dates we discussed, which should go in the

24    order as well.

25         So December -- by December 5th, document production

 1   from defendants was to be completed.

 2           The revamped or reconstructed privilege log which

 3   describes the attachments, emails and page number of

 4   attachments to emails will be produced.

 5           We'll have a telephone conference in 30 days or so.

 6   I'll have to find a spot when I have some time.  Is Fridays

 7   bad for people?  Generally Fridays bad for people?  I know in

 8   New Jersey, we have a state motion --

 9           MR. BURNSIDE:  Every other Friday is a motion day

10   in New Jersey.  But come afternoon, we're -- you know, come

11   the afternoon, we're usually done, unless you have to three

12   or four counties in the same day.

13           THE COURT:  Right.  By telephone?

14           MR. COONS:  Yeah.

15           MR. JINKINS:  That was my --

16           MALE SPEAKER:  And that's fine.

17           THE COURT:  Okay.  So we'll -- we'll try and do

18   that.  Fridays, I usually reserve for overflow cases in the

19   afternoon.  We'll try and schedule it for a nonmotion day on

20   a Friday.  I can't promise you that.  But when the call is

21   posted, knowing that we're probably going to have -- maybe

22   not, but probably an hour of conversation, if the time and

23   date is --

24           MR. BURNSIDE:  I'm sorry, Your Honor, I'm just

25   looking ahead on my calendar.  I have a matter in California

1    for which I have to be out there on the Monday -- the Monday

2    of the -- Monday the 7th and 8th, and depending on how much

3    prep I have to do, I may wind up going out the Thursday and

4    Friday before, so the 4th --

5                THE COURT:  Well, then I'll target it for the week

6    of the 14th, December, that week, if everyone's in town.

7                MR. BURNSIDE:  That's fine by us, Your Honor.

8                MR. JINKINS:  I have some personal issues, but

9    we'll work something out.

10                THE COURT:  Okay.  And if it becomes a problem, you

11   let me know.  We can always change the date.  I am not --

12   I'll -- as I said, we'll do the work in progress, so I can be

13   flexible as well.

14                MR. JINKINS:  I'm not sure what the term means, but

15   I know that I'm not an indispensable party, Your Honor, so

16   it'll be fine if I -- if I can't do it.

17                I do have one request, Your Honor, and I should

18   have brought this off -- up -- it's on the record, but it's

19   very informal.  The manner in which these damages documents

20   will be produced, can we get it in the normal production

21   situation, but also in their native electronic form, if

22   possible, so if they have these things all in an Excel

23   spreadsheets that are easy -- easily manipulated by our

24   experts so that they can do the searches and the profits and

25   the -- you know, all that stuff, that would be beneficial to

1    all.

2            MR. BURNSIDE:  I'm glad the word "manipulate" is on

3    the record.  I'll be using that one in the future.

4            I don't have a conceptual problem.  I just don't

5    want my client to have to convert it from one type of file to

6    another if that's not what they normally maintain.  But

7    conceptually, I don't have objection to it.

8            THE COURT:  All right.  So why don't you meet and

9    confer on that and see what --

10           MR. JINKINS:  I think we're on the same page, and

11   that's --

12           THE COURT:  Yeah.

13           MR. JINKINS:  He knows what I'm talking about --

14           THE COURT:  Right.

15           MR. JINKINS:  And that's what we want to be able to

16   do.

17           THE COURT:  Okay.  So in 30 days, we'll start

18   setting dates for discovery, if all things go as planned.

19           Anything else?

20           ATTORNEY FOR PLAINTIFF:  I have one question, it is

21   kind of procedural question, and I thought we tried to look

22   at the website.  I'm not -- but in any event, we may have an

23   early partial summary judgment motion, and in some places,

24   the courts will allow that, and some places, they say, wait,

25   you know, do it all at once.  And I didn't know if that this

 1   court had a preference about that?

 2            THE COURT:  Judge Hayden's requirement is that we

 3   sign off on a final pretrial order for any -- as to summary

 4   judgment motions to be filed.

 5            We can talk about this in greater detail, if you

 6   really think you've got a slam dunk.  And what you would have

 7   to do is a partial final pretrial order.  So --

 8            MR. JINKINS:

 9            ATTORNEY FOR PLAINTIFF:  Do you want to object now

10   to our "slam dunk"?

11            MR. BURNSIDE:  I'd like to weigh in --

12            THE COURT:  I'm going to go off the record.

13             (Conclusion of proceedings at 4:27 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

|Hearing
|12-cv-04047, November 5, 2015
Certification

1                              Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3   that the 39 pages contained herein constitute a full, true,

4   and accurate transcript from the official electronic

5   recording of the proceedings had in the above-entitled

6   matter; that research was performed on the spelling of proper

7   names and utilizing the information provided, but that in

8   many cases the spellings were educated guesses; that the

9   transcript was prepared by me or under my direction and was

10  done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12  the parties hereto nor am I in any way interested in the

13  outcome hereof.

14

15

16

17

18  S/ *Sara L. Kern*                    9th of November, 2015

19  _____      _____
    Signature of Approved Transcriber              Date

20

21
    Sara L. Kern, CET**D-338
22  King Transcription Services
    3 South Corporate Drive, Suite 203
23  Riverdale, NJ  07457
    (973) 237-6080
24

25