**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NITE GLOW INDUSTRIES, INC., I DID IT, INC., and MARNI MARKELL HURWITZ,<br><br>   *Plaintiffs,*<br><br> v.<br><br>CENTRAL GARDEN & PET COMPANY and FOUR PAWS PET COMPANY, D/B/A FOUR PAWS PRODUCTS, LTD.,<br><br>   *Defendants*. | Civil Action No. 12-4047 (KSH) (CLW)<br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

Before the Court are plaintiffs' two remaining motions *in limine*; plaintiffs' other six motions, as well as three filed by defendants, were previously decided. (D.E. 577.) The pending motions seek (1) to preclude proposed defense fact witness Cristina Weekes from testifying at trial (D.E. 538), and (2) a pre-trial ruling that plaintiffs may move post-trial for attorneys' fees and punitive damages (D.E. 541). The Weekes motion will be denied, with the qualification that defendants must produce certain material to plaintiffs in advance of trial. The attorneys' fee/punitive damages motion will be denied.

**II. Background**

Given the narrow issues before Court, the lengthy history of this case is recited only briefly. In June 2018, a jury found defendants liable for misappropriating plaintiffs' idea for an applicator for flea and tick medication for animals, as well as for breach of contract and patent infringement.

1

Post-trial, the Court granted judgment as a matter of law for defendants on the patent infringement claim and vacated the associated damages award. This ruling meant that plaintiffs were not entitled to attorneys' fees or enhanced damages because they sought that relief only in connection with the patent claim. The Court left in place the jury's liability findings on the breach of contract and misappropriation claims as well as the damages the jury awarded for misappropriation, but eliminated the breach of contract damages as duplicative of the misappropriation damages.

On appeal, the Federal Circuit affirmed this Court's rulings with the exception of the $11,006,000 damages award on the misappropriation claim, which it vacated. *Nite Glow Indus. Inc. v. Central Garden & Pet Co.*, 2021 WL 2945556 (Fed. Cir. July 14, 2021). The Federal Circuit remanded for a new trial on damages for misappropriation, concluding that plaintiffs are limited to head-start damages. *Id.* at *1, 6-9. In sum, the panel "reverse[d] the district court's denial of defendants' motion for a new damages trial, vacate[d] the jury's award of damages for misappropriation, and remand[ed] for a new trial of damages for misappropriation, which damages must be attributable to the head-start period." *Id.* at *9.

Following the remand, the parties engaged in discovery and other pretrial preparation under the supervision of Magistrate Judge Cathy L. Waldor, culminating in the entry of a final pretrial order and the parties' 11 motions in limine.

**III. Discussion**

    **A. Motion to Exclude Testimony of Cristina Weekes**

Plaintiffs contend that Cristina Weekes, formerly an employee of defendant Central Garden & Pet Company and a proposed fact witness for defendants, should be precluded from testifying at trial because she has been and will continue to be paid for her time spent *preparing* for her deposition and trial testimony, rather than only for her time spent actually testifying. According to

2

plaintiffs, this makes her an improperly paid fact witness in violation of Rule 3.4(b) of the New Jersey Rules of Professional Conduct.

Rule 3.4(b) provides that lawyers shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."  The dispute here concerns the "inducement" prohibition.  The overall state of the relevant law has not changed since the issue arose during the first trial in this case.  Generally, a party may compensate its own fact witness for the reasonable travel costs the witness incurs to attend the trial or hearing and for the reasonable value of time spent testifying.  *See* 18 U.S.C. § 201(b)(3), (c)(2), (d) (prohibiting corruptly giving, offering, or promising anything of value to influence a person's testimony as a witness and giving, offering, or promising anything of value to a person "for or because of" the person's testimony as a witness, but excluding travel costs and reasonable value of time lost in attending proceedings from the prohibition); *Rocheux Int'l v. U.S. Merchants Fin. Grp., Inc.*, 2009 WL 3246837, at *3 (D.N.J. Oct. 5, 2009) (Brown, J.) (citing *In re PMD Enters.*, 215 F. Supp. 2d 519, 529-30 (D.N.J. 2002)).

Beyond those categories, the traditional approach is that payment is impermissible due to concerns about encouraging perjury.  *See, e.g.*, *Goldstein v. Exxon Research & Eng'g Co.*, 1997 WL 580599, at *1-2, 4 (D.N.J. Apr. 16, 1997) (Chesler, Mag. J.).  Plaintiffs' request to preclude Weekes's testimony is based on this reasoning. *See id.* at *3 (time witness spent preparing to testify is not compensable by litigant).  But in practice, even in cases invoking the traditional test, the facts matter.

The cases plaintiffs themselves rely on make this clear. In both *Rocheux* and *PMD*, the plaintiff, through counsel, was either paying or seeking to pay a former employee of its *adversary* under circumstances suggesting that the payment was aimed at influencing the witness's

3

testimony. In other words, the facts squarely implicated the reason for the rule. In *Rocheux*, plaintiff retained and paid more than $4,000 to an allegedly disgruntled former employee of defendant who had sought out plaintiff and its counsel to offer testimony about defendant. Although characterized as an expert, in substance this witness was offering factual testimony. After discussing how the witness came to be retained and the content of his proffered testimony, the Court concluded that it was "clear that [the witness] is a fact witness, and that Plaintiff's counsel improperly procured payment *for* [the witness's] factual testimony." 2009 WL 3246837, at *1-3 (emphasis added). Because counsel's "decision to pay [the witness] for factual testimony ha[d] cast a cloud over the legitimacy of that testimony," exclusion of the testimony was necessary. *Id.* at *4.[1]

In *PMD*, plaintiff's attorney sought to hire defendant's former employee (who was also a material fact witness for defendant and a member of its litigation control group), offering him $100/hour to review and organize certain documents and falsely representing to him that the court had approved the arrangement. The court ruled that the resulting "clear appearance of impropriety" violated RPC 3.4(b).

But where the circumstances show that a party is not paying its fact witness for, or because of, the witness's testimony, courts have declined to exclude it. Relevant considerations can include the reasonableness of the compensation under the circumstances, the prior relationship between the witness and the paying party, and what is told to the witness about the payment's purpose (*i.e.*, that it is to compensate for loss of time, not the substance or fact of testimony). *Consol. Rail Corp. v. CSX Transp., Inc.*, 2012 WL 511572, at *4-13 (E.D. Mich. Feb. 16, 2012) (after reviewing in

---

[1] The Court also held that defendants did not have to pay the $1500 fee the witness demanded, through plaintiff's counsel, to sit for a deposition, and that they could recover their reasonable attorneys' fees and costs for litigating the sanctions motion. *Id.*

4

detail the nature of the arrangement between plaintiffs and witness, their former employee, and disclosures made to defendants during the litigation about that arrangement, court declined to preclude witness from testifying and permitted defendant to cross-examine him on the agreement; time spent reviewing documents and meeting with attorneys was properly compensable); *Goldstein*, 1997 WL 580599, at *5-7 (concluding that although it was improper for party to agree to pay its former employee for his time spent preparing to testify, "it is really the credibility of [the witness's] testimony which is at issue," not his *ability* to testify; appropriate remedy was ordering full disclosure of agreement and permitting plaintiff to address the agreement and the witness's credibility on cross-examination). *See also Prasad v. MML Invs. Servs., Inc.*, 2004 WL 1151735, at *5-7 (S.D.N.Y. May 24, 2004) (declining to vacate arbitration award based on fact witness being paid for preparation time; rate was reasonable and no indication that payment was, for example, to secure cooperation of adverse witness).

The American Bar Association's Committee on Ethics and Professional Responsibility has provided similar guidance, opining that there is no reason to distinguish between compensation for actual testimony time and for time spent preparing to testify, "so long as the lawyer makes it clear to the witness that the payment is not being made for the substance (or efficacy) of the witness's testimony or as an inducement to 'tell the truth.'" ABA Comm. on Ethics & Prof'l Resp., Formal Ethics Op. 96-402. Similarly, the witness can be compensated "for time spent in reviewing and researching records that are germane" to the testimony as long as local law does not provide otherwise. *Id.* Whether compensation is "reasonable" can be based on either the amount of income the witness loses directly by missing work, or based on "the reasonable value of the witness's time based on all relevant circumstances." *Id.*

Thus guided, the Court reaches the same conclusion it did in the first trial after plaintiffs raised this issue with a different defense witness. (*See* D.E. 390, 6/19/18 Tr. 167:2-4 (concluding "I don't find that what he is saying . . . to be bought and paid for").) Here, defendant Central's proposed witness is its former employee Cristina Weekes, who worked for Central during periods relevant to the events in this case and testified at the first trial. She left Central in 2019 but remained on as a consultant until 2021. Plaintiffs deposed her as part of the proceedings on remand, and she testified that Central contacted her in 2022 to assist in this case and she entered an agreement with it under which she was paid $250/hour for her time spent on the case, which included preparation time and time spent finding or identifying information for discovery. The rate matched what Central paid her during her previous consulting stint. Weekes also testified about her current employment and role and responsibilities there. (D.E. 538-1, Pls.' Moving Br. 2-3; D.E. 546, Defs.' Opp. Br. 3.) That she was being compensated by Central and how that compensation was structured was information available to plaintiffs well in advance of trial, and her deposition transcript reflects that plaintiffs questioned her at length on those topics.

Enough context exists to find that defendants are not improperly paying Weekes for, or because of, her testimony (which, after all, is subject to cross-examination on this issue). *See Goldstein*, 1997 WL 580599, at *6-7. Defendants shall produce their current agreement with Weekes to plaintiffs no later than January 8, 2024.[2] Plaintiffs' motion *in limine* with respect to Weekes is otherwise denied.

---

[2] Plaintiffs claim that they requested this agreement at Weekes's 2022 deposition and again thereafter, and that defendants refused to produce it. (D.E. 557, Pls.' Reply 2 n.1.) Defendants claim that plaintiffs did not serve a "written discovery request" for the agreement and did not "issue a discovery request" for it at the 2022 deposition, but represent that they are "willing to produce it" to the Court. (D.E. 546, Defs.' Opp. 10.) Given the Court's caution to defendants during the first trial, which was related to untimely disclosure of a similar arrangement for a different witness (D.E. 390, 6/19/18 Tr. 168:3-7), it is surprising that this dispute has arisen at

### B. Motion to Determine Availability of Attorneys' Fees and Punitive Damages

Plaintiffs also seek to establish that attorneys' fees and punitive damages will be available to them at the end of the retrial on misappropriation damages. While this is typically a matter for post-trial consideration, because the resolution of this issue has implications for the evidence to be introduced at trial,[3] and because the parties' arguments are based on issues of law and procedure that require no further development of the facts, the Court will address it now.

First, based on a careful review of the case's history, the Court concludes that plaintiffs are foreclosed from arguing any entitlement to punitive damages. Although they did not seek punitive damages in the operative second amended complaint (D.E. 50) – nor, for that matter, in any prior version of the complaint – plaintiffs sought to place that issue before the jury in the first trial. The Court rejected the attempt:

> And to the extent . . . the misappropriation claim is pressed as a basis for punitive damages, I've already ruled that the profits can be considered for various reasons and I simply don't find that the evidence that's presented provides the kind of platform that would be necessary for the extraordinary remedy of punitive damages so they are not in the case.

(D.E. 392, 6/22/18 Tr. 221:22-222:3.) Following closing arguments, plaintiffs raised the issue again, citing a need to preserve the record and arguing that there was sufficient evidence to warrant punitive damages on the misappropriation claim. The Court, disagreeing, adhered to its earlier

---

all, and the Court declines to wade into it beyond ordering defendants to produce the document that will resolve it.

[3] By way of example, defendants have moved *in limine* to preclude plaintiffs from introducing a privilege log at trial (a request the Court previously stated would be addressed in this opinion (D.E. 577, 11/28/23 Order ¶ 1(m)) and which is now moot given the ruling herein). (D.E. 531-1, Defs.' Omnibus Mot. in Limine, at 29-30 (Req. No. 13).) Plaintiffs responded that the log is relevant to their anticipated request for attorneys' fees and punitive damages. (D.E. 550, Pls.' Br. in Opp. to Defs.' Omnibus Mot. in Limine, at 37.) Plaintiffs also cited that rationale in arguing why a related email should not be excluded at trial. (*Id.* at 14.)

ruling. (D.E. 393, 6/25/18 Tr. 152:20-153:14.) Plaintiffs did not revisit the matter in post-trial motion practice and instead sought an enhanced damages award only on the patent claim, invoking 35 U.S.C. § 284.[4] (*See* D.E. 404-1, Pls.' Br. in Supp. of Mot. for Enhanced Damages; D.E. 429, Pls.' Rely in Supp. of Mot. for Enhanced Damages.)

Before the Federal Circuit, they raised the issue of enhanced damages only in connection with the patent claim. (D.E. 549-1, Najemy Decl., Ex. 1 (Br. of Plaintiffs-Cross-Appellants), at 66-67, 78-79, 83.) Despite having reason to raise that issue – at that point, the only claim they had successfully secured a monetary judgment on was the misappropriation claim, and that was the only claim that could therefore support any enhanced award, whether it be punitive damages or attorneys' fees – plaintiffs did not argue that this Court's ruling excluding punitive damages was error. *Cf. Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1374 (Fed. Cir. 2023) (observing that issue not waived if no reason to raise it in first appeal) (citing *United States v. Lee*, 358 F.3d 315, 324 (5th Cir. 2004)). Instead they asserted that what the jury did award in damages for misappropriation (approximately $11 million, based on a disgorgement theory) was sufficiently supported.

Procedurally, then, this Court ruled that punitive damages were not available to plaintiffs, who did not contest the ruling in prosecuting their own appeal or in opposing relief on defendants' appeal. Using varying terminology—*res judicata*, forfeiture, waiver, the mandate rule—courts have time and again recognized that a party in that position does not get another bite at the apple on a subsequent remand. *Patra v. Pennsylvania State Sys. of Higher Educ.*, No. 20-2320, 2023

---

[4] Section 284 of the Patent Act provides that in addition to awarding damages that are "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer," plus costs and interest, the Court "may increase the damages up to three times the amount found or assessed."

WL 4618292, at *3 n.3 (3d Cir. July 19, 2023) (observing on second appeal that challenge to district court's ruling on discovery issue was forfeited where not raised in first appeal); *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) ("'any issue that could have been but was not raised on appeal is waived and thus not remanded'" (quoting *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002)); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396-99 (3d Cir. 1994) (district court could not, on remand, revisit rulings it made earlier that were not challenged on the appeal that led to the remand; failure to contest those rulings on appeal meant they were *res judicata*); *Havlish v. 650 Fifth Avenue Co.*, 934 F.3d 174 (2d Cir. 2019) (district court generally cannot reopen an issue on remand that was "ripe for review at the time of an initial appeal but . . . nonetheless foregone," citing mandate rule). This Court will do likewise. Plaintiffs' effort to resurrect this issue now is rejected, as is their argument that the full spectrum of tort remedies (including punitive damages) is available on remand because the Federal Circuit remanded for a new trial on damages for misappropriation, a tort. (D.E. 541-1, Pl.'s Br. in Supp. of 8th Mot. in Limine, at 1, 12.)

      Even to the extent some of the doctrines cited above permit a measure of discretion in whether to excuse a waiver or forfeiture, *see, e.g.*, *Columbia Sportswear*, 80 F.4th at 1374, the Court declines to allow plaintiffs to open a new, expansive front in what was clearly envisioned as a narrow remand proceeding that would address what "damages [are] attributable to the head-start period" on the misappropriation claim. *Nite Glow*, 2021 WL 2945556, at *9. *See Aleynikov v. Goldman Sachs Grp., Inc.*, 2015 WL 225804, at *2 (D.N.J. Jan. 16, 2015) (McNulty, J.) ("This trial court is obligated to follow the letter *and spirit* of that mandate without deviation.") (emphasis added)).

9

As to plaintiffs' pursuit of attorneys' fees, their arguments also seek to re-open closed doors without persuasive reasons in support. They challenge a laundry list of decisions and positions taken by defendants and their counsel and assert that this conduct is sanctionable under 28 U.S.C. § 1927 and the Court's inherent power to award fees. (D.E. 541-1, Pls.' Moving Br. 3, 6-10.) But they already challenged this very same conduct in their motions for attorneys' fees and costs and enhanced damages after the first trial—motions that were based on the attorney fee and damages-enhancement provisions of the Patent Act, 35 U.S.C. §§ 284 and 285. (D.E. 405-1, Pls.' Br. in Supp. of Mot. for Attys' Fees and Expenses; D.E. 404-1, Pls.' Br. in Supp. of Mot. for Enhanced Damages.) The success of their arguments depended on a successful patent infringement claim, and when the Court vacated the jury's infringement determination (and the Federal Circuit affirmed), plaintiffs no longer had a viable fee claim either.

What plaintiffs are seeking, therefore, is to reclaim arguments that they waived: that attorneys' fees are available on a claim other than the patent infringement claim, and that they should be awarded as a sanction, rather than pursuant to an attorneys' fee statute. Their argument that it would have been "duplicative" to make these arguments the first time around (D.E. 560, Pls.' Reply 2) is insufficient to excuse that waiver. The Court's inherent powers to award sanctions, which plaintiffs now seek to invoke, must be "exercised with restraint and discretion" given their "potency," *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F. 3d 175, 188 (3d Cir. 2002) (cleaned up), and, among other requirements, the Court must have an "adequate factual predicate for flexing its substantial muscle under its inherent powers." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). *See also, e.g.*, *PMD*, 215 F. Supp. 2d at 526 (discussing required factual findings to ensure sanction is tailored to the harm identified). The standard for an award of sanctions under 28 U.S.C. § 1927 is similarly

demanding, requiring the existence of bad faith and a record that supports various factual findings. *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) ("To impose § 1927 sanctions, a court must 'find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." (quoting *Prudential*, 278 F.3d at 188) (internal quotation marks omitted)).

Finally, plaintiffs' suggestion (D.E. 541-1, at 3 n.1) that the Court can "find guidance" for a fee award in the attorneys' fee provision of New Jersey Trade Secrets Act, N.J.S.A. § 56:15-6, while creative, is unpersuasive. Under New Jersey law, fee shifting is disfavored and will not be undertaken unless a contract, statute, or court rule provides otherwise. *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 385 (2009) (per curiam). Neither contract nor court rule (specifically. N.J. Ct. R. 4:42-9) provides for that in this case, and plaintiffs did not bring a claim under the statute they cite.

**IV.     Conclusion**

Plaintiffs' fifth and eighth motions in limine (D.E. 538, 541) are DENIED. An appropriate order will issue.

Dated: December 27, 2023

s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.